LUCAS B. STONE ET AL. *v.* NORMAN A. PATTIS ET AL.
(AC 33546)

DiPentima, C. J., and Gruendel and Alvord, Js.

Argued January 9—officially released July 16, 2013

*Joan L. Zygmunt*, self-represented, with whom, on the brief, was *Lucas B. Stone*, self-represented, the appellants (plaintiffs).

*David R. Makarewicz*, for the appellees (defendants John J. Radshaw III et al.).

*Opinion*

DiPENTIMA, C. J. The plaintiffs, Lucas B. Stone and Joan L. Zygmunt, appeal from the judgment of the trial court granting the motions to strike and dismiss filed by the defendants, Thomas R. Gerarde, John J. Radshaw III, and Howd & Ludorf, LLC (Howd defendants).[1] On appeal, the plaintiffs claim that (1) judge trial referees were involved improperly in their case, and (2) the court erred in (a) determining that the Howd defendants filed an appropriate motion to strike and ruling in their favor, (b) eliminating claims in the plaintiffs' third amended complaint and denying their right to file a fourth amended complaint, and (c) granting the Howd

---

[1] The plaintiffs also named Norman A. Pattis and the Law Offices of Norman A. Pattis, LLC, as defendants in this case. The issues in this appeal solely pertain to the Howd defendants.

defendants' motion to dismiss the fourth amended complaint.[2] We disagree that there was any impropriety in the judge trial referee involvement or that the court erred in any of the alleged ways and affirm the court's decisions to strike and dismiss respectively.

The following facts and procedural history are pertinent to this appeal. The plaintiffs engaged Norman A. Pattis and the Law Offices of Norman A. Pattis, LLC (Pattis defendants), as counsel in their lawsuit filed in federal court against the town of Westport in 2003 (federal action). The Howd defendants were retained as counsel by the town of Westport. During the pendency of the federal action, the plaintiffs became dissatisfied with Pattis' representation, and they filed a grievance with the federal grievance committee. Pattis withdrew his appearance in the federal action, and the plaintiffs proceeded self-represented until they finally withdrew the federal action. At time of the federal action and before Pattis' withdrawal, the Howd defendants hired Christy Doyle, who formerly had been an associate at Williams and Pattis, LLC.[3] The plaintiffs commenced the present action claiming damages arising out of these facts, but they have not alleged that Doyle had knowledge of the federal action while working for Williams and Pattis, LLC, or that she was involved with the federal action after being hired by the Howd defendants.[4]

---

[2] It is difficult to identify the nature and extent of the plaintiffs' claims as set forth in their briefs. We have addressed the claims to the extent that they are analyzed. See *Paoletta* v. *Anchor Reef Club at Branford, LLC*, 123 Conn. App. 402, 406, 1 A.3d 1238 ("[f]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs" [internal quotation marks omitted]), cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

[3] Williams and Pattis, LLC, a predecessor entity of the Pattis defendants, is not named in the present action.

[4] In their substitute complaint, the plaintiffs allege that: "When we filed a motion pro se to disqualify [the Pattis defendants] on May 15, 2006, and also filed grievances with the Federal Grievance Committee against their individual attorneys, Attorney Doyle and Defendants Radshaw and Gerarde

In May, 2009, the plaintiffs filed a fifteen count complaint against the Pattis defendants and the Howd defendants (original complaint). The plaintiffs alleged breach of contract, breach of fiduciary duty, fraud, violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., negligent infliction of emotional distress, and malpractice against the Pattis defendants, and alleged tortious interference with a fiduciary relationship, abuse of process, fraud, breach of fiduciary duty, CUTPA violations, and negligent infliction of emotional distress against the Howd defendants, and alleged conspiracy as to all defendants. A flurry of filings followed. The Howd defendants moved to strike the counts directed at them in the original complaint, and argued the motion, but the court marked the motion off after the plaintiffs filed a substitute complaint in October, 2009 (substitute complaint). The Howd defendants then filed a motion to reargue their motion to strike. The court, *Adams, J.*, denied the motion to reargue, and the Howd defendants filed a motion to strike the counts directed at them in the substitute complaint in January, 2010. The court heard argument, and on April 16, 2010, the court, *Brazzel-Massaro, J.*, issued a memorandum of decision striking the counts alleging conspiracy, tortious interference with a fiduciary relationship, abuse of process, fraud, breach of fiduciary duty and violations of CUPTA from the substitute complaint. Count fifteen, alleging negligent infliction of emotional distress, remained.

submitted false affidavits dated May 5, and June 21, 2006, that at the time of Doyle's hiring by Howd & Ludorf Attorney Gerarde had called John Williams of Williams and Pattis, LLC, and wrote him a letter stating that Attorney Doyle would never be involved in any matter at Howd & Ludorf that she was involved in or had knowledge of while at Williams and Pattis. Subsequently, Mr. Williams in a letter to the State Bar Grievance Committee dated September 29, 2007, denied having knowledge of our case or of any such letter or agreement with Mr. Gerarde." Despite these allegations, plaintiffs fail to allege that Doyle *did* have knowledge of or work on the federal action at any time.

In April, 2010, the plaintiffs filed a second amended complaint, in which they added four new counts against the Howd defendants: violation of General Statutes § 53a-521, fraudulent nondisclosure of a conflict of interest and two violations of CUTPA. The plaintiffs also amended count fifteen of their substitute complaint in their second amended complaint. The Howd defendants moved to strike these counts from the second amended complaint on the ground that these counts constituted an improper amendment to the substitute complaint in violation of Practice Book § 10-60, but their argument was continued by the court because one of the plaintiffs, Stone, was not present at oral argument. Before argument on the motion to strike could be heard, the plaintiffs filed a third amended complaint. The Howd defendants filed a request to revise the third amended complaint, on the ground that the counts alleging a violation of § 53a-521, fraudulent nondisclosure of a conflict of interest and two violations of CUTPA were improper amendments to the substitute complaint. They also sought to reinstate count fifteen, alleging negligent infliction of emotional distress, as it had been pleaded in the substitute complaint because that count had survived their motion to strike. The court, *Wenzel, J.*, overruled the plaintiffs' objections to the requested revisions. In September, 2010, the plaintiffs filed a fourth amended complaint in which only count fifteen was directed at the Howd defendants. Subsequently, in October, 2010, the Howd defendants filed a motion to dismiss count fifteen of the fourth amended complaint[5] on the ground that the court lacked subject matter jurisdiction because they have immunity

[5] Although the court overruled the plaintiffs' objections to the Howd defendants' request to revise the third amended complaint, which contained an amended count fifteen, the plaintiffs filed a fourth amended complaint with a differently amended count fifteen, to which the Howd defendants directed their motion to dismiss.

from the plaintiffs' claim of negligent infliction of emotional distress. The plaintiffs requested leave to amend the fourth amended complaint, but their request was denied in December, 2010. The plaintiffs nevertheless filed a fifth amended complaint seven days later. On April 6, 2011, the court, *Blawie, J.*, granted the Howd defendants' motion to dismiss count fifteen of the fourth amended complaint. This appeal followed.

I

We turn first to the plaintiffs' claim on appeal that judge trial referees improperly were involved in this case. The plaintiffs argue specifically that the Superior Court has no power to refer any matter to a referee unless all parties consent and they did not consent. We disagree that their consent was necessary for judge trial referees to participate in their case.

Throughout the course of this extensive litigation, judge trial referees presided over pretrial matters. The plaintiffs primarily argue that *Hon. Kevin Tierney*, judge trial referee, did not have jurisdiction to issue the January 11, 2010 order stating that all defendants' motions to strike be argued together. Further, the plaintiffs argue that *Hon. A. William Mottolese*, judge trial referee, should have recused himself, as *Hon. Kevin Tierney*, judge trial referee, had done at the plaintiffs' request. Throughout the extensive motion practice of this case, *Hon. Kevin Tierney* and *Hon. A. William Mottolese*, judge trial referees, decided a number of motions. The last decision made by a judge trial referee in this matter was in August, 2010. The motions to strike and dismiss that are the subject of this appeal were decided by Judges Brazzel-Massaro and Blawie, respectively, neither of whom are judge trial referees.

"[A] referee is not a judge of the [S]uperior [C]ourt or the [C]ourt of [C]ommon [P]leas but is sui generis, [and] sits as a special tribunal. . . . The [judge trial]

referee system, as a special tribunal, does not encroach upon, and does not unconstitutionally compete with, other constitutional courts. On the contrary . . . [judge trial] referees serve the very practical purpose of relieving [t]he court's crowded dockets." (Citations omitted; internal quotation marks omitted.) *Great Country Bank* v. *Pastore*, 241 Conn. 423, 430, 696 A.2d 1254 (1997). General Statutes § 52-434 (a) (1) provides in relevant part: "The Superior Court may refer any civil, nonjury case *or with the written consent of the parties or their attorneys, any civil jury case pending before the court in which the issues have been closed to a judge trial referee who shall have and exercise the powers of the Superior Court in respect to trial, judgment and appeal in the case . . . .*" (Emphasis added.) Practice Book § 19-3 specifically states in relevant part: "The court may also refer to a judge trial referee any motion for summary judgment and *any other pretrial matter in any civil nonjury or jury* case." (Emphasis added.) In the present case, the decisions made by judge trial referees were exclusively pretrial decisions. The Howd defendants filed a jury claim on March 19, 2012, and Judge Brazzel-Massaro issued a case management order to close the pleadings by June 29, 2012. Because all of the motions that were decided by judge trial referees were decided before the pleadings were closed, consent was not required under § 52-434 (a). See also *Girard* v. *Weiss*, 43 Conn. App. 397, 407, 682 A.2d 1078 ("the absence of a consent requirement in the provisions of [Practice Book § 19-3] regarding the referral of pretrial matters to trial referees, in contrast to the express mandate for such consent contained in the provisions of . . . § 52-434 [a] [1] and Practice Book § [19-3] regarding the referral of civil jury cases in which the issues have been closed and in which the trial referee is to exercise the powers of the Superior Court in respect to trial, judgment and appeal, indicates

that no such consent is necessary for the referral of pretrial matters"), cert. denied, 239 Conn. 946, 686 A.2d 121 (1996). Accordingly, we determine that the plaintiffs' consent was not required at any stage of their litigation prior to June 29, 2012, and reject the claim of improper judge trial referee involvement.

## II

The plaintiffs next claim that the court erred in considering the Howd defendants' motion to strike the substitute complaint and in granting that motion. Specifically, the plaintiffs argue that the court should have decided the Howd defendants' motion to strike the original complaint and that, even considering the substitute complaint, the court erred in determining that, as the opposing party in the federal action, the plaintiffs could not sue opposing counsel for actions in the federal action. We disagree.

## A

We first turn to the plaintiffs' claim that the court erred in considering the Howd defendants' motion to strike the substitute complaint. The plaintiffs argue that their due process rights were violated[6] because the court should have rendered its decision on the Howd defendants' motion to strike the original complaint. We disagree.

Pursuant to Practice Book § 10-61, when a pleading is amended, the adverse party may plead to the amended

---

[6] "A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . . It is a fundamental tenet of due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution that persons whose . . . rights will be affected by a court's decision are entitled to be heard at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Bruno* v. *Bruno*, 132 Conn. App. 339, 350, 31 A.3d 860 (2011).

pleading. See *Danzig* v. *PDPA, Inc.*, 125 Conn. App. 254, 262, 11 A.3d 153 (2010), cert. denied, 300 Conn. 920, 14 A.3d 1005 (2011), cert. denied sub nom. *Dadi* v. *Danzig*, 564 U.S. 1044, 131 S. Ct. 3077, 180 L. Ed. 2d 899 (2011). The plaintiffs claim that their due process rights were violated by the court's decision to consider the Howd defendants' motion to strike the substitute complaint, and emphasize that they "put a lot of effort into the Objection and Memorandum of Law in opposition to [the Howd] Defendants' Motion to Strike the original complaint." This argument is belied by the fact that the plaintiffs themselves noted in their objection to the Howd defendants' motion to reargue that the Howd defendants' "pleading and oral argument should . . . be regarded as applicable to the amended pleading." The Howd defendants were entitled to file a motion to strike the plaintiffs' substitute complaint pursuant to Practice Book § 10-61.[7] Thus, the court did not err in deciding the Howd defendants' motion to strike the substitute complaint without deciding the motion to strike the original complaint.[8]

## B

The plaintiffs next claim that the court erred in granting the Howd defendants' motion to strike the counts alleging conspiracy, tortious interference with a fiduciary relationship, fraud, breach of fiduciary duty, CUTPA violations, and abuse of process from the substitute complaint (stricken counts). The plaintiffs argue that Judge Brazzel-Massaro (1) ignored certain issues raised in the plaintiffs' briefs and (2) improperly concluded that they had not adequately pleaded the

[7] Although the plaintiffs raise other issues with the procedural aspects of the Howd defendants' motion to strike, we find their claims inadequately briefed, and we therefore decline to reach their merits.

[8] The plaintiffs' claim of untimely filing as to the Howd defendants' motion to strike is without merit. Pursuant to Practice Book § 10-61, the Howd defendants were entitled to file a pleading on the plaintiffs' substitute complaint. This claim is essentially addressed in part II A of this opinion.

stricken counts. We conclude that the plaintiffs' arguments are unpersuasive.

"A motion to strike attacks the legal sufficiency of the allegations in a pleading. . . . In reviewing the sufficiency of the allegations in a complaint, courts are to assume the truth of the facts pleaded therein, and to determine whether those facts establish a valid cause of action. . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. . . . Because a motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court, our review of the court's ruling [on a motion to strike] is plenary." (Internal quotation marks omitted.) *Kumah* v. *Brown*, 307 Conn. 620, 626, 58 A.3d 247 (2013).

1

The plaintiffs claim that they were denied due process because the court ignored the conflict of interest issues raised by the plaintiffs in their memoranda in opposition to the Howd defendants' motion to strike and allowed the Howd defendants to present a speaking motion. We disagree.

The purpose of a motion to strike hearing is to determine whether a party has pleaded facts sufficient to support a cause of action. *Kumah* v. *Brown*, supra, 307 Conn. 626. A trial court does not make factual findings at such a hearing. Id. In striking the count of breach of fiduciary duty, the court stated: "The plaintiffs claim that the fiduciary duty by opposing counsel arises out of the fact that Doyle was an attorney at [the Pattis defendants] and then switched to [the Howd defendants] while [the federal action] was still in progress. The plaintiffs fail to allege, however, that Doyle was

in any way involved in the case on either side. This coincidence, absent more specific allegations, is too attenuated to give rise to a fiduciary duty between the plaintiffs and the defendants. Moreover, rules of professional responsibility do not give rise to a civil cause of action for the plaintiffs. There is no duty, there cannot be a breach of such duty . . . ." On the basis of our review of the pleadings, memoranda, and the court's decision, we conclude that the court properly considered the plaintiffs' arguments and the allegations in their complaint in its decision. Accordingly, we reject the plaintiffs' procedural due process claim.

### 2

The plaintiffs also claim that the court erred in determining that they had failed to plead sufficiently the claims alleged in the stricken counts against the Howd defendants. Specifically, the plaintiffs argue that the court should not have relied on the Howd defendants' immunity from suit by an opponent because the Howd defendants "colluded" with the Pattis defendants in the federal action and therefore exceeded the bounds of zealous representation, thereby eliminating their immunity.

In their challenge to the court's ruling on the motion to strike, the plaintiffs do not address the legal sufficiency of each stricken count in their briefs. Instead, the plaintiffs rely solely on their argument that the Howd defendants' hiring of Doyle created a conflict of interest and that such a conflict supports all of their claims as alleged in their substitute complaint.

"[D]etermining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy. . . . A central dimension of the attorney-client relationship is the attorney's duty of [e]ntire devotion to the interest of the client. . . . This obligation would be undermined were an attorney to be held

liable to third parties." (Internal quotation marks omitted.) *Clukey* v. *Sweeney*, 112 Conn. App. 534, 543, 963 A.2d 711 (2009); see also *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 727, 627 A.2d 374 (1993). "Courts have refrained from imposing liability when such liability had the potential of interfering with the ethical obligations owed by an attorney to his or her client." *Krawczyk* v. *Stingle*, 208 Conn. 239, 246, 543 A.2d 733 (1988). "As a general rule, attorneys are not liable to persons other than their clients for the negligent rendering of services." Id., 244. Further, as discussed previously in this opinion, the plaintiffs do not allege facts to support the claim that Doyle at any time was involved with the federal action either as an employee of the Pattis defendants or of the Howd defendants. Without adequate briefing by the plaintiffs to persuade us to decide otherwise, we decline to review the court's judgment striking the plaintiffs' claims of conspiracy, tortious interference with a fiduciary relationship, fraud, breach of fiduciary duty and CUTPA violations from their substitute complaint.

The plaintiffs do briefly address the legal sufficiency of their count alleging abuse of process. They argue that the court ignored the plaintiffs' allegations that the Howd defendants "enlisted several Westport police officers to repeatedly contact a subpoenaed witness."

In Connecticut "an attorney may be sued for misconduct by those who have sustained a special injury because of an unauthorized use of legal process. In permitting such a cause of action, we must, however, take care not to adopt rules which will have a chilling and inhibitory effect on would-be litigants of justiciable issues." (Internal quotation marks omitted.) *Mozzochi* v. *Beck*, 204 Conn. 490, 495, 529 A.2d 171 (1987). "An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not

designed. . . . Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process . . . against another primarily to accomplish a purpose for which it is not designed . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 494. "[T]he addition of [the word] primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." (Internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 100 Conn. App. 63, 77, 918 A.2d 889 (2007), aff'd, 286 Conn. 548, 944 A.2d 329 (2008).

The plaintiffs allege that the Howd defendants conspired with the Pattis defendants regarding subpoenaed witnesses and notices of depositions and mail receipts. They do not, however, plead any specific conduct by the Howd defendants sufficient to support a cause of action for abuse of process. "[A]lthough attorneys have a duty to their clients and to the judicial system not to pursue litigation that is utterly groundless, that duty does not give rise to a third party action for abuse of process unless the third party can point to *specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation*." (Emphasis added; internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 100 Conn. App. 78. Although the plaintiffs generally allege fraudulent behavior, they do not allege specific injury or how the conduct by the Howd defendants was intended to cause them specific injury necessary for setting forth a claim of abuse of process.[9] The court

[9] The plaintiffs claimed the same $400,000 damages in each of their tort claims against the Howd defendants. They do not allege from where they

therefore did not err in striking the count alleging abuse of process.

## III

The plaintiffs next claim that the court erred in overruling their objections to the Howd defendants' request to revise and, consequently, in eliminating counts from the plaintiffs' third amended complaint. Specifically, the plaintiffs argue that counts from a complaint can only be removed by a motion to strike, and that the court therefore erred in removing such claims by allowing the Howd defendants' request to revise. We disagree with this interpretation of our rules of practice.

"A trial court's consideration of a request to revise and any objection thereto involves, inter alia, consideration of the factual allegations, the extent to which they are sufficiently precise or specific, and whether the allegations are unnecessary, repetitious, scandalous, impertinent, immaterial or otherwise improper . . . . These considerations necessarily involve the trial court's discretionary judgment. . . . As with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue . . . is whether the trial court could have reasonably concluded as it did." (Citations omitted; internal quotation marks omitted.) *Cassotto* v. *Thibault*, 131 Conn. App. 328, 335, 27 A.3d 399 (2011).

Practice Book § 10-35 states in relevant part: "Whenever a party desires to obtain . . . (2) the deletion of any unnecessary, repetitious, scandalous, impertinent, immaterial or otherwise improper allegations in an adverse party's pleading . . . or (4) any other appropriate correction in an adverse party's pleading, the

derived this calculation of damages, and they do not allege what portion of such damages is relevant to their abuse of process claim.

party desiring any such amendment in an adverse party's pleading may file a timely request to revise that pleading." The plaintiffs argue that "there is nothing in Practice Book Rule § 10-35 regarding Request to Revise that allows for the deletion of entire counts of a complaint." This claim is contrary to the language of Practice Book § 10-35, as the section specifically states that a request to revise is the appropriate method for the "deletion of any unnecessary, repetitious, scandalous, impertinent, immaterial or otherwise improper allegations."

Further, the plaintiffs argue that Practice Book § 10-44 allows them to file an amended complaint that adds new counts and allegations without the court's leave. The plaintiffs misconstrue Practice Book § 10-44, which states in relevant part: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading." Practice Book § 10-44 grants the power to amend the portion of a complaint that has been stricken, not the power to revise a complaint entirely. See W. Horton & K. Knox, 1 Connecticut Practice Series: Procedure in Civil Matters (2011 Ed.) § 10-44, p. 547 ("Repleading after a motion to strike is limited to those areas which were stricken. . . . Additional pleadings, such as new actions, must be added under a request to amend . . . ." [Citation omitted.]); see also *East Greylock, LLC* v. *OBC Associates, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-04-4002173 (May 4, 2007) (43 Conn. L. Rptr. 396) ("[e]ven though the pleading has been stricken, only the defective portion of the pleading is affected and, as provided by [Practice Book §] 10-44 . . . that part may be amended within fifteen days after the motion is granted" [internal quotation marks omitted]). Practice Book § 10-44 does not permit the plaintiffs to add new counts in subsequent amended complaints following

the court's decision striking the substitute complaint in accordance with our rules of practice. The court was within its discretion in overruling the plaintiffs' objections to the Howd defendants' request to revise, thereby removing the new counts alleged in the third amended complaint that were not contained in the substitute complaint.

## IV

Finally, the plaintiffs claim that the court erred by dismissing count fifteen of their fourth amended complaint.[10] Specifically, the plaintiffs argue that the court erred in dismissing their claim of negligent infliction of emotional distress on the merits. The Howd defendants argue that the immunity encompassing their communications during the federal action deprives the court of subject matter jurisdiction over the plaintiffs' allegations in this count. We agree with the Howd defendants.

"[A] motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . In undertaking this review, we are mindful of the well established notion that, in

---

[10] The plaintiffs also argue that they were denied the right to amend their complaint pursuant to General Statutes §§ 52-128 and 52-130. Specifically, the plaintiffs claim that the court erred when it sustained the Howd defendants' objection to the plaintiffs' request for leave to amend the third amended complaint and when it sustained the Pattis defendants' objection to the plaintiffs' request to amend the fourth amended complaint. The Howd defendants argue that the plaintiffs have inadequately briefed this claim, as they have not provided the correct statutory provisions or a description of the court's procedures giving rise to error. We agree with the Howd defendants and therefore decline to reach the merits of the plaintiffs' argument on this claim.

determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 650, 974 A.2d 669 (2009). "[I]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 532–33, 911 A.2d 712 (2006).

In the fifteenth count of the fourth amended complaint, the plaintiffs alleged that the Howd defendants inflicted emotional distress on the plaintiffs by conspiring with the Pattis defendants not to disclose Doyle's hiring, subpoenaing witnesses unduly, failing to call witnesses and not disclosing the reasons for such failure to the court. The plaintiffs claim further that the Howd defendants "should have realized that their repeated conduct of deception, unfairness and negligence against [the plaintiffs] involved an unreasonable risk of causing emotional distress . . . [and] as a result of the aforesaid misconduct of the defendants herein . . . the plaintiffs have suffered and continue to suffer damages."

The Howd defendants moved to dismiss the plaintiffs' claim of negligent infliction of emotional distress on the ground that the trial court lacked subject matter jurisdiction because they have absolute immunity from the plaintiffs' claims. See *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005) ("[t]he doctrine of sovereign

immunity implicates subject matter jurisdiction, and is therefore a proper basis for a granting of a motion to dismiss" [internal quotation marks omitted]); *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 787, 865 A.2d 1163 (2005) ("the purpose of the absolute immunity afforded participants in judicial and quasi-judicial proceedings is the same as the purpose of the sovereign immunity enjoyed by the state"). They argue that the plaintiffs' claims are precluded by immunity because the Howd defendants were acting within the context of the federal action and for the benefit of their client. "At common law, communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . [L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature. . . . Once it is determined that a proceeding is quasi-judicial in nature, the absolute privilege that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition." (Citation omitted; internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital*, supra, 787–88. Even communications that are preliminary to a proposed judicial proceeding are absolutely privileged if they bear some relation to the proceeding. See 3 Restatement (Second), Torts § 588, p. 250 (1977).

In ruling on the motion to dismiss, the court, *Blawie, J.*, concluded that "[t]here is no doubt . . . that the [federal action], and [the Howd defendants'] concomitant defense of that lawsuit, constituted a formal judicial proceeding. It is also clear that any grievance proceedings against a member of the bar such as were instituted here by the plaintiffs, either at the federal, state, and/or local level, fall squarely within the category

of quasi-judicial proceedings." The court noted that the privilege enjoyed by those involved in judicial proceedings derives from the public interest where "[w]itnesses and parties to judicial proceedings must be permitted to speak freely . . . if the judicial process is to function." (Internal quotation marks omitted.)

On appeal, the only claim we consider is negligent infliction of emotional distress. Although the plaintiffs claimed abuse of process in their substitute complaint, that count was properly stricken, and thus the plaintiffs' allegations as to Doyle's hiring and the question of a conflict of interest are extraneous to their remaining claim of negligent infliction of emotional distress. The question of litigation privilege with respect to negligent infliction of emotional distress is an issue of first impression. A recent decision from our Supreme Court is instructive in its elucidation of the history and application of immunity during judicial proceedings. In *Simms* v. *Seaman*, 308 Conn. 523, 546, 69 A.3d 880 (2013), the court clarified that a party is shielded from suit stemming from "conduct while representing or advocating for a client during a judicial proceeding that was brought for a proper purpose." Id. In determining the scope of such immunity, the court differentiated between claims that challenge the "underlying purpose of the litigation [from those that challenge] an attorney's role as advocate . . . ." Id. Although the plaintiffs in the present case claim that their negligent infliction of emotional distress claim stems from their abuse of process claim, the substance of their allegations are based on actions taken and communications made by the Howd defendants during their defense of the town of Westport during the federal action. Thus, following the delineation set forth in *Simms*, their claim challenges the Howd defendants in their capacity as advocates for the town of Westport. *Simms* warns against suits "which could expose attorneys to harassing and

expensive litigation, would be likely to inhibit their freedom in making good faith evidentiary decisions and representations and, therefore, negatively affect their ability to act as zealous advocates for their clients." Id., 551.

The plaintiffs' allegations of various conspiracies with the Pattis defendants regarding the subpoenaing of witnesses, erroneous statements of fact to the federal court, and improper discussions with the Westport police department regarding subpoenaed witnesses are all, as the court correctly characterized, communications made within the context of a judicial proceeding, namely the federal action, rendering the Howd defendants absolutely immune from suit by the plaintiffs for any such communications. Further, "[t]he burden [is] upon the pleaders to make such averments that the material facts [alleged in a complaint] should appear with reasonable certainty . . . . Whenever that language fails to define clearly the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties. . . . But essential allegations may not be supplied by conjecture or remote implication." (Internal quotation marks omitted.) *Daley* v. *Wesleyan University*, 63 Conn. App. 119, 127, 772 A.2d 725, cert. denied, 256 Conn. 930, 776 A.2d 1145 (2001); see also *Cahill* v. *Board of Education*, 198 Conn. 229, 236, 502 A.2d 410 (1985). We conclude, therefore, after reviewing the multitude of arguments the plaintiffs advance, that the allegations supporting their claim of negligent infliction of emotional distress are based on communications protected by absolute immunity from suit. See *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 787 ("[a]t common law, communications uttered or published in the course of judicial proceedings are absolutely privileged so long

as they are in some way pertinent to the subject of the controversy" [internal quotation marks omitted]). The court did not err in granting the Howd defendants' motion to dismiss count fifteen of the fourth amended complaint.

The judgment is affirmed.

In this opinion the other judges concurred.