******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

CONRAD O. MEMBRINO *v.* RALPH G.
MEMBRINO ET AL.
(AC 48017)

Alvord, Elgo and Keller, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment dismissing his complaint alleging intentional infliction of emotional distress in connection with proceedings in the Probate Court for lack of subject matter jurisdiction. The plaintiff claimed that the court improperly determined that the allegations asserted in his claim against the defendants were barred by the litigation privilege. *Held*:

The trial court properly determined that it lacked subject matter jurisdiction and dismissed the plaintiff's complaint, as the plaintiff's claims were predicated on the defendants' alleged conduct in furtherance of a probate proceeding in which the plaintiff participated and, thus, the specific claim of intentional infliction of emotional distress as alleged by the plaintiff was the type of action the litigation privilege was intended to prevent.

Argued December 15, 2025—officially released June 2, 2026

*Procedural History*

Action to recover damages for intentional infliction of emotional distress, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the plaintiff withdrew his claims as to the defendant Eric Somma et al.; thereafter, the court, *Massicotte, J.*, dismissed the action as to the named defendant; subsequently, the court, *Massicotte, J.*, rendered judgment dismissing the plaintiff's complaint, from which the plaintiff appealed to this court. *Affirmed*.

*Conrad O. Membrino*, self-represented, the appellant (plaintiff).

*Robert C. Lubus, Jr.*, with whom was *Brooke Weise*, for the appellees (defendant Roberta Minuto et al.).

*Opinion*

ALVORD, J. This appeal concerns a civil action that was commenced in 2017 and arose out of a probate matter originating in 2012. The self-represented plaintiff,

Conrad O. Membrino, appeals from the judgment of the trial court dismissing his complaint, alleging intentional infliction of emotional distress, against the defendants Roberta Minuto (Roberta) and Alda Membrino (Alda).[1] On appeal, the plaintiff claims that the court improperly dismissed his action for lack of subject matter jurisdiction on the ground that the allegations asserted in his intentional infliction of emotional distress claim were barred by the litigation privilege.[2] We affirm the judgment of the trial court.

The following procedural history is relevant to our resolution of the plaintiff's claim on appeal. The plaintiff commenced the present action in September 2017. The operative complaint, filed on May 28, 2019, includes the following allegations. The plaintiff is the son of Emily Membrino (Emily), who died in September 2014. Emily had three children, the plaintiff, Roberta, and Ralph G. Membrino (Ralph), who died in 2018. Ralph was married to Alda.

The plaintiff alleged that he moved to Philadelphia in 1994 and thereafter spoke with Emily on the telephone

[1]Eric Somma, Tom Minuto, and Susan Angela Minuto Burgess also were named as defendants. In May 2019, the plaintiff withdrew his claims as to these individuals. Ralph G. Membrino also was named as a defendant, but he died in October 2018. In April 2024, the court, *Massicotte, J.*, dismissed the action as to Ralph following the defendant Roberta Minuto's motion to dismiss, on the basis that the plaintiff had failed to comply with a prior order that he open the estate and file a motion to substitute the estate as a party. We refer to Roberta Minuto and Alda Membrino collectively as the defendants and individually by name where appropriate.

[2]The plaintiff includes more than twenty-five paragraphs in the statement of issues contained in his appellate brief, most of which are abandoned due to a lack of briefing. "[When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *Alterio* v. *Spak*, 237 Conn. App. 84, 90, 349 A.3d 614 (2026). We address only those arguments that are set forth in the plaintiff's brief.

every day. He alleged: "Ralph . . . and . . . Roberta . . . acting in concert with . . . Alda . . . fraudulently instituted an involuntary conservatorship proceeding against Emily . . . in 2012 and falsely testified at a Probate Court hearing on February 24, 2012, that Emily . . . suffered from dementia. As a result of that involuntary proceeding, Ralph . . . on March 8, 2012, was appointed conservator of the estate of Emily . . . . He admitted under oath at the February 24, 2012 hearing that one of his reasons for seeking conservatorship over [Emily] was to prevent the plaintiff from being with [Emily]." The plaintiff further alleged that, as a result of the involuntary proceeding, Roberta was appointed conservator of the person of Emily.

The plaintiff alleges that Ralph informed the plaintiff on December 6, 2012, that his access to Emily was being restricted from that time forward. The plaintiff alleges that he "was able to see [Emily] only twice during that period before he saw her when she was dying—Christmas 2013 and Easter 2014. On both occasions Ralph [and the defendants] caused police officers to be summoned within one hour of the plaintiff being with [Emily]. The plaintiff was not allowed to take [Emily] out on either occasion. . . . The telephone was connected only twice during the last month of Emily's life—on September 3, 2014, and on September 9, 2014. After September 9, 2014, Roberta . . . then totally disconnected Emily['s] telephone for the specific purpose of preventing the plaintiff from having any contact with [Emily] during the final days of her life. . . . Upon a request for emergency relief, the Probate Court ruled that the plaintiff could see [Emily] on Sunday, September 21, 2014, for three hours in the presence of the conservators. The plaintiff saw [Emily] in the presence of Mary Ann and Dee Cianciolo on September 21, 2014, and September 22, 2014. On September 21, 2014, Emily could barely talk, and, on September 22, 2014, Emily could not talk at all. Telephone contact never was restored." Emily died on September 26, 2014.

The plaintiff alleges that he appealed the appointments of Roberta and Ralph. He further alleges that he was

appointed as coexecutor of Emily's estate in December 2014, at which time he alleges that he discovered that Emily did not have dementia and that Ralph and the defendants "fraudulently persuaded the Probate Court to declare her incompetent" and then "fraudulently concealed this fact from the plaintiff . . . ."

The plaintiff alleges that, "[b]ecause of the power they had fraudulently obtained over [Emily], the defendants . . . were able to inflict injuries upon the plaintiff in the ways described above and hereinafter." The plaintiff alleges that, on January 9, 2013, Ralph and the defendants "engaged the plaintiff in an angry confrontation and falsely accused him of criminal wrongdoing, as a result of which he was arrested and prosecuted although he was innocent of any wrongdoing." He alleges that, as a result of the wrongful prosecution, he was prevented from having contact with Emily until after "the criminal prosecution . . . was dismissed" on March 22, 2013. The plaintiff further alleges that, on April 30, 2013, Roberta issued orders to Emily's caregivers that the plaintiff was not permitted to take Emily out of the house. He further alleges that Roberta, on November 29, 2013, had the locks to Emily's house changed so that the plaintiff could not see Emily, that Roberta disconnected the telephone for days at a time so that the plaintiff could not call Emily, and that Ralph and the defendants "then also began unlawfully taping telephone calls between the plaintiff and [Emily] without either the plaintiff's or Emily's knowledge or permission." The plaintiff alleges that the defendants prevented him from seeing Emily on various occasions, including Mother's Day and Emily's ninety-fifth birthday, and that, on or about June 24, 2014, the plaintiff was notified that Roberta had sent a letter to his attorney forbidding the plaintiff from seeing Emily unless Roberta was present. The plaintiff also alleges that he was precluded from having contact with Emily's health care providers during her final illness and, as a result, was denied any information about her condition.

The plaintiff alleges that the conduct of Ralph and the defendants "was extreme and outrageous and was carried

out in reckless disregard of the fact that it would cause the plaintiff to suffer severe emotional distress." As a result, the plaintiff alleges that he suffered "severe emotional distress manifested in sleeplessness, depression, anxiety, loss of appetite, and mood swings, among other things." He seeks compensatory and punitive damages.

On May 1, 2024, the court, *Massicotte, J.*, sua sponte issued an order stating that it had "reason to question its subject matter jurisdiction to hear . . . the plaintiff's complaint . . . based on the litigation privilege." The court cited *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 725, 161 A.3d 630 (2017), and informed the parties that the litigation privilege implicates the court's jurisdiction. The court ordered the parties to submit briefing on the issue. The parties submitted briefing, and the court held a hearing on August 8, 2024.

On August 26, 2024, the court issued its memorandum of decision. It first stated that a probate proceeding is a judicial proceeding and explained that "[t]here is a sound public policy reason for permitting the complete freedom of expression that the grant of absolute immunity provides as the Probate Court has the authority to adjudicate issues related to conservatorships protecting the conserved and the disposition of property. There is a strong public interest in permitting persons to speak freely about the serious matters within the court's authority." The court next examined the allegations of the plaintiff's complaint and concluded that "the plaintiff's claims of fraud and testimonial lies in the probate proceedings, as well as the infliction of emotional distress from the fraud and its consequences in the course of the proceedings, are subject to the litigation privilege. All action complained of occurred in the proceeding, including the lies he claims, and his harm flowed from the alleged lies and fraud. The actions he complains of outside the courtroom all occurred while the proceeding was pending and were in furtherance of the judicial proceeding and the authority bestowed on the defendants as a result of the conservatorship. The plaintiff admitted that the statements made and actions

taken by the defendants were taken because of the power vested in the conservators by the court. In addition, the actions were necessarily considered by the judge in the emergency petition about when and under what conditions the plaintiff could see [Emily]." The court then stated that it "cannot extend the justiciable limits of its jurisdiction" in rejecting the plaintiff's argument that the litigation privilege should not operate to protect the alleged perjury his family members committed in the probate proceedings. Accordingly, the court dismissed the plaintiff's action.[3] This appeal followed.

On appeal, the plaintiff claims that the court improperly dismissed his complaint on the basis that the litigation privilege applied. The defendants respond that the court properly determined that the litigation privilege applied to the plaintiff's allegations of tortious conduct in the course of a probate proceeding. We agree with the defendants.

We first set forth our standard of review and relevant legal principles. "Because the litigation privilege implicates subject matter jurisdiction, we apply plenary review to the trial court's decision, indulging every presumption in favor of jurisdiction, construing the complaint in the plaintiff's favor, and taking the allegations as true, including facts necessarily implied." *Ammar I.* v. *Dept. of Children & Families*, 351 Conn. 656, 667–68, 332 A.3d 180 (2025); see also *Deutsche Bank AG* v. *Vik*, 349 Conn. 120, 137, 314 A.3d 583 (2024) ("Whether the litigation privilege applies in a given case is a question of law subject to de novo review. . . . When deciding whether the privilege applies, every presumption in favor of the court's jurisdiction should be indulged." (Citation omitted.)). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy

[3]Alda filed a counterclaim against the plaintiff. On November 6, 2024, the trial court granted the plaintiff's motion to strike the counterclaim as untimely and entered an order providing that, "[g]iven the procedural posture of the case—the underlying action has been dismissed and no revised counterclaim may be filed—what remains of the original action is dismissed."

presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 770, 143 A.3d 578 (2016).

"Before addressing the applicability of the litigation privilege, [w]e begin our analysis with a review of [this] doctrine . . . as set forth in *Simms* v. *Seaman*, 308 Conn. 523, 531–40, 69 A.3d 880 (2013). In *Simms*, we noted that the doctrine of absolute immunity originated in response to the need to bar persons accused of crimes from suing their accusers for defamation. . . . The doctrine then developed to encompass and bar defamation claims against all participants in judicial proceedings, including judges, attorneys, *parties*, and witnesses. . . . We further noted that, [l]ike other jurisdictions, Connecticut has long recognized the litigation privilege, and that [t]he general rule is that defamatory words spoken upon an occasion absolutely privileged, though spoken falsely, knowingly, and with express malice, impose no liability for damages recoverable in an action in slander . . . .

"Recently, in *Scholz* v. *Epstein*, 341 Conn. 1, 10, 266 A.3d 127 (2021), we recognized the policy rationales underlying this privilege. Although we articulated these rationales in relation to a claim brought against an attorney for communications made during a judicial proceeding, we also have relied on these rationales to apply immunity to claims brought against party opponents and witnesses: [T]he purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . [T]he possibility of incurring the costs and inconvenience associated with defending a

[retaliatory] suit might well deter a citizen with a legitimate grievance from filing a complaint. . . . Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine [of absolute immunity] was intended to protect nevertheless faced the threat of suit. In this regard, the purpose of the absolute immunity afforded participants in judicial and quasi-judicial proceedings is the same as the purpose of the sovereign immunity enjoyed by the state. . . . As a result, courts have recognized absolute immunity as a defense in certain retaliatory civil actions in order to remove this disincentive and thus encourage citizens to come forward with complaints or to testify." (Citation omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Dorfman* v. *Smith*, 342 Conn. 582, 590–91, 271 A.3d 53 (2022). Our appellate courts have recognized that absolute immunity applies not only to defamation actions but extends to civil actions including intentional infliction of emotional distress arising from statements made during judicial proceedings. See id., 592.

The following factors are "relevant to any determination of whether policy considerations support applying absolute immunity to any particular cause of action: (1) whether the alleged conduct subverts the underlying purpose of a judicial proceeding in a similar way to how conduct constituting abuse of process and vexatious litigation subverts that underlying purpose; (2) whether the alleged conduct is similar in essential respects to defamatory statements, inasmuch as the privilege bars a defamation action; and (3) whether the alleged conduct may be adequately addressed by other available remedies." (Footnote omitted.) Id., 592–93. "Since . . . *Simms*, this court has clarified that these factors . . . are simply instructive, with the focus being on the issues relevant to the competing interests in each case in light of the particular context of the case. . . . *We are not required to rely exclusively or entirely on these*

*factors*; rather, they are useful when undertaking a careful balancing of all competing public policies implicated by the specific claim at issue and determining whether affording [parties] this common-law immunity from this common-law action is warranted."[4] (Emphasis added; internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 139.

We first look to whether the plaintiff's claim challenges the purpose of the underlying judicial proceeding. "[I]n determining whether the plaintiff's claim challenges the purpose of an underlying judicial proceeding, we look at the elements of the claim itself." *Scholz* v. *Epstein*, supra, 341 Conn. 15. The elements of a cause of action for intentional infliction of emotional distress do not challenge the purpose of the proceeding,[5] and our courts previously have extended absolute immunity to civil actions alleging intentional infliction of emotional distress arising from statements made during judicial proceedings. See *Ammar I.* v. *Dept. of Children & Families*, supra, 351 Conn. 666 ("[o]ur decisions have expanded the litigation privilege beyond defamation claims to bar a variety of retaliatory civil claims arising from communications or communicative acts occurring in the course of a judicial or quasi-judicial proceeding, including, but not limited to, claims for tortious interference, intentional infliction of emotional distress, fraud, and violations of [the Connecticut Unfair Trade Practices Act, § 42-110a

---

[4]Although none of the parties address these factors in their appellate briefing and the trial court did not analyze the factors, whether absolute immunity applies to a cause of action is a question of law subject to de novo review and implicates subject matter jurisdiction. See *Dorfman* v. *Smith*, supra, 342 Conn. 592. Accordingly, we proceed to consider the factors outlined in *Simms*.

[5]"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000).

et seq.]" (internal quotation marks omitted)). Turning to the specific allegations, the plaintiff alleges that the defendants "fraudulently instituted an involuntary conservatorship proceeding against Emily . . . in 2012 and falsely testified at a Probate Court hearing on February 24, 2012, that Emily . . . suffered from dementia." Our Supreme Court has stated that "it is not enough for the plaintiff to allege that the misconduct at issue constituted an improper use of the judicial system, but, rather, the cause of action itself must challenge the *purpose* of the underlying litigation or litigation conduct." (Emphasis in original.) *Dorfman* v. *Smith*, supra, 342 Conn. 596–97. Our Supreme Court "[has] refused to apply absolute immunity to causes of action alleging the improper use of the judicial system," including claims for abuse of process, vexatious litigation, malicious prosecution and retaliatory litigation in violation of General Statutes § 31-290a "because these claims seek to hold an individual liable for . . . the improper use of the judicial process for an illegitimate purpose, namely, to inflict injury [on] another individual in the form of unfounded [legal] actions." (Internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik,* supra, 349 Conn. 138. Although the plaintiff includes an allegation that the defendants fraudulently instituted the underlying conservatorship proceeding, the plaintiff's cause of action for intentional infliction of emotional distress and his remaining allegations do not challenge the purpose of the underlying litigation, and, therefore, this factor is neutral.

As to the second factor, the alleged conduct in the present case, like a defamation claim, is predicated on alleged false communications during the probate proceeding. The plaintiff alleges that the defendants testified falsely that Emily suffered from dementia. See, e.g., id., 141 (considering whether complaint alleges defendant's participation in prior proceeding). The plaintiff does not allege any misconduct prior to the conduct during the probate proceeding. Cf. id., 147 (alleged fraud did not commence during action but, rather, began months

earlier). The remaining allegations of conduct outside of the probate proceeding constitute the plaintiff's claimed injuries from the fraudulent conduct commencing and occurring during the probate proceeding.[6] Thus, this factor weighs in favor of application of the litigation privilege.

The third factor, "whether the alleged conduct may be adequately addressed by other available remedies"; *Dorfman* v. *Smith*, supra, 342 Conn. 593; weighs heavily in favor of application of the litigation privilege. The plaintiff indisputably was active in the probate proceeding, and the remedies generally available to deter misconduct of the nature alleged fully were available to him within that proceeding. Furthermore, both in his submission to the trial court and during the hearing addressing that court's subject matter jurisdiction, the plaintiff acknowledged that he was pursuing an appeal in the probate matter.

The plaintiff's primary argument on appeal is that the "defendants' nonlitigation conduct is not shielded by the litigation privilege."[7] The plaintiff directs this

---

[6]For example, the plaintiff alleges that the defendants prevented him from seeing Emily on various occasions and additionally alleges that, "upon a request for emergency relief, the Probate Court ruled that the plaintiff could see [Emily] on Sunday, September 21, 2014, for three hours in the presence of the conservators." Thus, the actions alleged were undertaken in the context of the Probate Court action.

[7]The plaintiff raises several other contentions, all of which are unavailing.

First, the plaintiff maintains that his action was pending "for almost seven years before subject matter jurisdiction was ever mentioned." He argues that "a party can forfeit subject matter jurisdiction if they do not invoke it in a timely manner" and, thus, the defendants forfeited any claim of lack of subject matter jurisdiction. We disagree.

"[A] court lacks discretion to consider the merits of a case over which it is without jurisdiction. . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, 320 Conn. 535, 548, 133 A.3d 140 (2016); see also *Brady* v. *Bickford*, 179 Conn. App. 776, 790–91, 183 A.3d

court's attention to the defendants' alleged actions occurring outside the courtroom, including calling the police when the plaintiff visited Emily, disconnecting Emily's telephone, recording calls between the plaintiff and Emily, and changing the locks on Emily's house. We are not persuaded that such alleged conduct falls outside the litigation privilege, where the misconduct alleged by the plaintiff is the "[fraudulent institution of] an involuntary conservatorship proceeding" and false testimony at a Probate Court hearing. Thereafter, the plaintiff alleged that, "[b]ecause of the power they had fraudulently obtained over [Emily], the defendants . . . were able to inflict injuries upon the plaintiff." In other words, the alleged wrongdoing concerns fraudulent actions and testimony during the probate proceeding, which proceeding resulted in the establishment of a conservatorship. To the extent that the plaintiff alleges that the subsequent conduct of the defendants pursuant to the conservatorship caused him harm, he does not allege such conduct to be improper independent of the alleged probate proceeding misconduct.[8]

Moreover, as this court previously has stated, "[t]he burden [is] upon the pleaders to make such averments

27 (2018) ("[T]he litigation privilege implicates a trial court's subject matter jurisdiction. . . . A claim that the court lacks subject matter jurisdiction may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Citation omitted; internal quotation marks omitted.)).

Second, the plaintiff raises several contentions that are not pertinent to the present action. He contends that the court "ignored the fact that evidence showed [Emily] did not have dementia" and "ignored" law regarding limitations on a conservator's authority. The plaintiff also maintains that there was impropriety in the failure to open Ralph's estate and notes that an appeal is pending in the Superior Court with respect to that issue. Each of these contentions relate to separate probate matters and are not implicated by the court's determination that it lacked subject matter jurisdiction over the present action.

[8]Although neither party separately analyzes Alda's conduct, our review of the record reveals that the plaintiff's complaint alleges that she, along with Ralph and Roberta, testified in the probate proceeding. See *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 142 ("unless the defendants participated in [the judicial] proceedings as parties or witnesses, the [litigation] privilege does not attach to them"). Moreover, the plaintiff's

that the material facts [alleged in a complaint] should appear with reasonable certainty. . . . Whenever that language fails to define clearly the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties. . . . But essential allegations may not be supplied by conjecture or remote implication." (Internal quotation marks omitted.) *Stone* v. *Pattis*, 144 Conn. App. 79, 99, 72 A.3d 1138 (2013). The plaintiff's complaint, reasonably construed, does not allege any misconduct separate and apart from that taken in furtherance of the probate proceeding. Accordingly, the allegations supporting his claim of intentional infliction of emotional distress are based on communications and conduct that are protected by absolute immunity from suit.

The plaintiff primarily relies on *Fiondella* v. *Meriden*, 186 Conn. App. 552, 554, 200 A.3d 196 (2018), cert. denied, 330 Conn. 961, 199 A.3d 20 (2019), in support of his claim that the defendants' conduct is not shielded by the litigation privilege. The present case, however, is not factually similar to *Fiondella*. In *Fiondella*, this court concluded that the litigation privilege did not bar an action alleging that the defendants had conspired to conceal from the plaintiffs the existence of a declaratory judgment action, which was contrary to their property rights and interests. Id., 555–57. This court stated that "[t]he plaintiffs' claims are predicated on the defendants' alleged intentional conduct to deprive them of notice of the declaratory judgment action rather than on the defendants' conduct or statements made during

complaint contains only one allegation attributed to Alda individually, that she prevented the plaintiff from seeing Emily on April 21, 2014. That allegation, however, is prefaced by the plaintiff's acknowledgment that the defendants had the ability to inflict the alleged injuries "[b]ecause of the power they had fraudulently obtained over [Emily]." In sum, the plaintiff alleges injury stemming from the misconduct the defendants engaged in during the probate proceeding. Accordingly, we are convinced that the trial court properly concluded that the litigation privilege applied not only to Roberta but also to Alda.

a judicial proceeding." Id., 563. Moreover, the plaintiff in *Fiondella* was not a party to the underlying declaratory judgment action. Id., 562. In contrast, the present claims are predicated on the defendants' alleged conduct in furtherance of the probate proceeding in which the plaintiff participated.

Having considered "the issues relevant to the competing interests in [this] case . . . in light of the particular context of the case"; (internal quotation marks omitted) *Scholz* v. *Epstein*, supra, 341 Conn. 11; we are persuaded that the specific claim of intentional infliction of emotional distress as alleged by the plaintiff is the type of action the litigation privilege was intended to prevent. Accordingly, the court properly determined that it lacked subject matter jurisdiction over the plaintiff's action.

The judgment is affirmed.

In this opinion the other judges concurred.