******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL PERUGINI *v.* ROSEMARY GIULIANO ET AL.
(AC 35167)

Bear, Keller and Harper, Js.

*Argued December 2, 2013—officially released March 25, 2014*

(Appeal from Superior Court, judicial district of Waterbury, Trombley, J. [request for leave to amend]; Dooley, J. [judgment of dismissal in part]; Shapiro, J. [judgment].)

*Michael Perugini*, self-represented, the appellant (plaintiff).

*Amber J. Hines*, with whom was *Paul Grocki*, for the appellees (defendants).

*Opinion*

KELLER, J. The self-represented plaintiff, Michael Perugini, appeals from the judgment of the trial court rendered in favor of the defendants, attorney Rosemary Giuliano and the law firm with which she is associated, Giuliano & Richardson, LLC, in his action alleging misconduct in the defendants' representation of the plaintiff's wife during the couple's prior divorce proceedings. The plaintiff claims that the court erred in (1) suspending his February 8, 2012 deposition until the pleadings were closed, (2) denying his February 22, 2012 request for leave to amend his complaint, (3) dismissing his claim of negligent infliction of emotional distress for lack of subject matter jurisdiction, and (4) striking his August 6, 2012 substitute complaint from the docket and rendering judgment for the defendants. We affirm the judgment of the trial court.

The record reveals the following procedural history. On September 9, 2010, the plaintiff, appearing before the court as a self-represented party, filed a two count complaint against the defendants for wilful violation of the Rules of Professional Conduct and negligent infliction of emotional distress. The complaint alleged that Giuliano had engaged in misconduct during her representation of Kimberly Gamble-Perugini, the plaintiff's former wife, in prior marriage dissolution proceedings against the plaintiff. Specifically, it alleged that Giuliano failed to disclose a conflict of interest resulting from her prior representation of Judge Elizabeth Bozzuto, who presided over postjudgment proceedings and issued various rulings between April 27, 2009, and June 8, 2010. Although the complaint acknowledged that any allegedly inappropriate orders issued by Judge Bozzuto had been vacated, the plaintiff sought damages from the defendants for the stress, agony, depression and expense he claims to have endured as a result of Giuliano's alleged misconduct.

This action was commenced on September 10, 2010. The defendants filed a request to revise the plaintiff's complaint on September 21, 2011, to which the plaintiff did not properly object until December 30, 2011. In the interim, the plaintiff noticed Giuliano's deposition for October 20, 2011. On October 14, 2011, the defendants filed a motion for a protective order on several grounds, including the claim that privileged documents involving the defendants' representation of Gamble-Perugini should not be explored and the deposition should be limited to the allegations in the complaint. On December 6, 2011, the court, *Trombley, J.*, issued an order allowing the deposition to proceed by February 17, 2012, which further stated: "The areas inquired into at said deposition shall be those that are framed by the allegations in the plaintiff's complaint . . . ." He further indicated that "[t]he defendants are not required to produce their file or any documents in their possession

pertaining to the dissolution action . . . entitled Kimberly Gamble-Perugini v. Michael Perugini, as the information contained therein is protected by attorney-client privilege.''

On January 17, 2012, Judge Trombley, pursuant to Practice Book § 10-37 (b),[1] ordered the plaintiff to revise his complaint as requested by the defendants. The plaintiff filed a motion to reargue to which the defendants objected. On February 8, 2012, Judge Trombley denied the motion to reargue and ordered the plaintiff to revise his complaint and to incorporate the revisions ordered by the court on January 17, 2012. On February 8, 2012, the plaintiff, having not yet revised his complaint, commenced a deposition of Giuliano. During the deposition, the plaintiff asked Giuliano questions regarding her communications with Gamble-Perugini during the prior divorce proceedings. The defendants objected, claiming that the information was protected by the attorney-client privilege and that the questions were outside the scope of the pleadings. Judge Trombley was asked to resolve the issue and, upon learning that the plaintiff still had not revised his complaint, ordered, sua sponte, that a revised complaint be filed within two weeks. Additionally, Judge Trombley suspended the deposition until, absent a motion for summary judgment, the pleadings were closed and all the issues were framed. On February 27, 2012, the plaintiff filed a motion to reargue asking Judge Trombley to reconsider the suspension of the deposition of Giuliano, which the court denied.

On February 21, 2012, the plaintiff filed a revised complaint that still contained only two counts, wilful violation of the Rules of Professional Conduct and negligent infliction of emotional distress. Although the revised complaint addressed some of the defendants' requested revisions, it also included new factual allegations that Giuliano had engaged in representation of Gamble-Perugini without her consent.

Only one day later, on February 22, 2012, the plaintiff filed a request for leave to amend his revised complaint, to which the defendants objected. The proposed amended complaint included with the request, dated February 22, 2012, deleted the count for wilful violation of the Rules of Professional Conduct, maintained the count for negligent infliction of emotional distress and added three new counts: fraudulent misrepresentation, conspiracy to defraud, and violation of the Connecticut Unfair Trade Practice Act (CUTPA), General Statutes § 42-110a et seq. The proposed amended complaint, in paragraphs 10 and 12 of the second count, further expanded the facts alleged in support of the plaintiff's claim that Giuliano had engaged in unauthorized representation of Gamble-Perugini while Giuliano had knowledge of the couple's reconciliation. On March 21, 2012, Judge Trombley sustained the defendants' objection to the plaintiff's request to file a proposed amended

complaint and established the two count February 21, 2012 revised complaint as the operative complaint. The court's order stated: "While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a [request] to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. . . . Practice Book § 10-60 (b) provides: The judicial authority may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial." (Citation omitted; internal quotation marks omitted.) On April 6, 2012, the plaintiff filed a motion to recuse Judge Trombley, which the court denied on April 23, 2012.

On April 9, 2012, the defendants filed another request to revise the plaintiff's February 21, 2012 revised complaint, to which the plaintiff objected. On May 14, 2012, the court, *Dooley, J.*, overruled the plaintiff's objections, thereby requiring plaintiff to revise his complaint as requested by the defendants. The plaintiff's second revised complaint, dated and filed on May 22, 2012, again set forth two counts of wilful violation of the Rules of Professional Conduct and negligent infliction of emotional distress. The defendants then moved to strike the second revised complaint, arguing that the Rules of Professional Conduct do not give rise to a cause of action and that the count of negligent infliction of emotional distress was barred by the doctrine of absolute immunity for attorney conduct in the course of a judicial proceeding.[2] On July 26, 2012, Judge Dooley granted the defendants' motion to strike as to the count sounding in wilful violation of the Rules of Professional Conduct[3] and dismissed the count sounding in negligent infliction of emotional distress for lack of subject matter jurisdiction under the doctrine of absolute immunity.

On August 6, 2012, pursuant to Practice §10-44,[4] the plaintiff filed a substitute complaint, premised on similar facts as previously set forth, but asserting six counts sounding in conspiracy to defraud, alienation of affection, violation of CUTPA, abuse of process, vexatious litigation and intentional infliction of emotional distress. The defendants objected to this substitute complaint, arguing that the plaintiff was required to request leave to amend his complaint pursuant to Practice Book § 10-60[5] and that the amendments made by the plaintiff were retaliatory, violated prior court orders, and were prejudicial to the defendants, given the age of the case and the fact that that many of the claims and allegations already had been ruled legally insufficient and improper. The plaintiff filed an opposition to the defendants' objection, arguing that he had the right to file a substitute complaint pursuant to Practice Book § 10-44 and that the defendants' objection was a

procedurally improper pleading. The plaintiff's opposition also addressed the defendants' nonprocedural arguments that the substitute complaint violated the law of the case and prejudiced the defendants. On September 25, 2012, the court, *Shapiro, J.*, sustained the defendants' objection and struck the August 6, 2012 substitute complaint from the record. On September 27, 2012, the defendants filed a motion for judgment. On October 11, 2012, the plaintiff filed a motion for extension of time to plead and a motion to reargue. On October 17, 2012, Judge Shapiro denied the plaintiff's motions, granted the defendants' motion for judgment and rendered judgment for the defendants. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

On appeal, the plaintiff first challenges Judge Trombley's order suspending the deposition of Giuliano until the pleadings were closed, and his order denying the plaintiff's February 22, 2012, request for leave to amend his complaint.

A

The plaintiff first claims that Judge Trombley erred in suspending the deposition of Giuliano until such time that the pleadings were closed. Specifically, the plaintiff argues that Judge Trombley's order suspending the deposition represented a reversal of the court's previous order compelling Giuliano to submit to a deposition before a certain date. We consider this claim to be abandoned.

At the February 8, 2012 hearing in which Judge Trombley was asked to resolve the dispute concerning Giuliano's invocation of the attorney-client privilege, the judge learned that the plaintiff had not yet revised his complaint as required by a previous order. As a result, he ordered that the plaintiff submit a revised complaint within two weeks from the date of the hearing. Following this order, Judge Trombley stated: "The second thing we are going to do is we are going to suspend this deposition as of now, until such time as the pleadings are closed and the issue is joined." He went on to explain that the plaintiff still would have an opportunity to complete the deposition before pleadings were closed if the defendants moved for summary judgment. He then asked the plaintiff: "Fair enough?" The plaintiff responded: "Fair enough." At no point during this hearing[6] did the plaintiff object to the court's order.

"It is fundamental that claims of error must be distinctly raised and decided in the trial court. . . . Practice Book § 60-5 provides in relevant part that our appellate courts shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . That requirement means that it must be so stated as to bring to the attention of the court the precise matter on which

its decision is being asked. . . . As our Supreme Court has explained, [t]he reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Iaquessa*, 132 Conn. App. 812, 814–15, 34 A.3d 1005 (2012).

Here, by failing to object to the court's suspension of the deposition, the plaintiff did not provide the court with a timely opportunity to reconsider the order. The record therefore is devoid of any deliberation as to why the deposition should have continued on February 8, 2012, or how its suspension might have prejudiced the plaintiff. Furthermore, having expressly agreed to the court's decision, the plaintiff cannot now seek to attack the order on appeal. See *Menon* v. *Dux*, 81 Conn. App. 167, 170–71, 838 A.2d 1038 (claim unpreserved where appealing party expressly acquiesced to court's evidentiary ruling at trial), cert. denied, 269 Conn. 913, 852 A.2d 743, cert. denied, 543 U.S. 1003, 125 S. Ct. 623, 160 L. Ed. 2d 463 (2004). Accordingly, we decline to review this unpreserved claim.

B

Next, the plaintiff claims that Judge Trombley erred in sustaining the defendants' objection to his February 22, 2012 request for leave to amend his complaint. Specifically, he argues that the court abused its discretion in failing to take a liberal approach to Practice Book § 10-60. We disagree.

"Our standard of review of the plaintiff's claim is well settled. While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [plaintiff's] burden in this case to demonstrate that the trial court clearly abused its discretion." (Citations omitted; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 128, 788 A.2d 83 (2002).

At the time of Judge Trombley's ruling, the action had been pending more than seventeen months, since

September 10, 2010. The pleadings still were not closed. In sustaining the defendants' objection to the plaintiff's request for leave to amend his complaint, the court noted that the plaintiff already had filed several complaints and cited the provision in Practice Book § 10-60 (b) that allows the court to restrain amendments in order to compel the parties to join issue in a reasonable time for trial. These were proper considerations within the court's discretion in ruling on the issue and, therefore, we decline to upset the court's decision.

## II

The plaintiff also challenges Judge Dooley's order dismissing the plaintiff's claim of negligent infliction of emotional distress for lack of subject matter jurisdiction. Specifically, he argues that the doctrine of absolute immunity does not apply to claims alleging attorney misconduct for the purpose of personal financial gain.[7] We are not persuaded.

"[W]hether attorneys are protected by absolute immunity for their conduct during judicial proceedings is a question of law over which our review is plenary." *Simms* v. *Seaman*, 308 Conn. 523, 530, 69 A.3d 880 (2013). As the doctrine of absolute immunity concerns a court's subject matter jurisdiction; *Stone* v. *Pattis*, 144 Conn. App. 79, 96–97, 72 A.3d 1138 (2013); we are "mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) Id., 95. The question before us is whether the facts as alleged in the pleadings, viewed in the light most favorable to the plaintiff, are sufficient to survive dismissal on the grounds of absolute immunity. *Rioux* v. *Barry*, 283 Conn. 338, 341, 343 927 A.2d 304 (2007).

Our case law differentiates between actions based on alleged misconduct by an attorney in his role as advocate, such as defamation and fraud, and actions that challenge the underlying purpose of the litigation itself, such as vexatious ligation and abuse of process. *Simms* v. *Seaman*, supra, 308 Conn. 546. For the former category, the law protects attorneys from suit in order to encourage zealous advocacy on behalf of their clients, unrestrained by the fear of exposure to tort liability. Id., 535–36. On this basis, we recently have held that claims against attorneys for negligent infliction of emotional distress are barred when the alleged conduct giving rise to the action occurs in the course of judicial proceedings. *Stone* v. *Pattis*, supra, 144 Conn. App. 98.

In the present case, the plaintiff alleged Giuliano, in the course of representing Gamble-Perugini in divorce proceedings against the plaintiff: (1) failed to disclose a conflict of interest with the presiding judge, (2) exerted improper influence over the judge to obtain favorable monetary rulings, and (3) filed court actions without

Gamble-Perugini's consent for her own financial benefit. All of this alleged conduct occurred in the context of the dissolution proceedings between the plaintiff and Gamble-Perugini. Giuliano therefore is immune from any claim of negligent infliction of emotional distress arising from that conduct. See id.

We recognize that the plaintiff alleged that certain proceedings at issue were not brought for a proper purpose, as they were allegedly initiated by Giuliano without Gamble-Perugini's consent for the sole purpose of self-enrichment. These allegations may have properly formed the basis for an abuse of process action, where "a legal process [is used] against another primarily to accomplish a purpose for which it is not designed"; [internal quotation marks omitted] *Mozzochi* v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987); and absolute immunity does not necessarily attach. Id., 497. Nonetheless, the allegation that certain judicial proceedings were not brought for a proper purpose does not in itself remove immunity for attorneys in negligent infliction of emotional distress actions. See *Simms* v. *Seaman*, supra, 308 Conn. 526–28, 569–70 (attorney who allegedly misrepresented client's financial situation in order to seek court ordered payments immune from action for intentional infliction of emotional distress). In order to avoid dismissal, such an action against an attorney must allege conduct that occurred outside the scope of judicial proceedings. See *Heim* v. *California Federal Bank*, 78 Conn. App. 351, 367, 828 A.2d 129 (holding that absolute immunity did not apply to intentional infliction of emotional distress claim where "some of the allegations . . . [were] based on . . . conduct that occurred outside the scope of judicial proceedings"), cert. denied, 266 Conn. 911, 832 A.2d 70 (2003). Thus, the court's decision to dismiss the plaintiff's claim on the basis of absolute immunity was proper.

### III

Next, the plaintiff challenges Judge Shapiro's orders striking the plaintiff's August 6, 2012 substitute complaint from the docket and entering judgment for the defendants.

### A

First, the plaintiff argues that the defendants' objection to his substitute complaint, rather than a motion to strike, was an improper vehicle to challenge a complaint filed pursuant to Practice Book § 10-44. We disagree.

"The interpretive construction of the rules of practice. . . . involves a question of law and our review . . . is plenary." (Citations omitted; internal quotation marks omitted.) *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 733–34, 830 A.2d 228 (2003). Judge Shapiro, in determining he could consider the defendants' objection, first noted that the procedural posture in this case differs from those in the two cases

cited by the plaintiff in support of his argument. The court noted that in each of the cases cited by the plaintiff, *Smith* v. *Furness*, 117 Conn. 97, 100, 166 A. 759 (1933), and *Newman* v. *Golden*, 108 Conn. 676, 679–80, 144 A. 467 (1929), permission *was* sought to file the amended pleading. Here, the plaintiff did not seek permission to file the August 6, 2012, substitute complaint. In addition, neither of these cited cases involved an objection, as in this case, that the substitute complaint violated prior court orders. The court then indicated, "[O]ther courts have considered objections to complaints which were filed after a motion to strike was granted."[8] Second, the court, noting that the defendants were claiming that the substitute complaint violated prior orders in the case, stated: "It is fundamental that no one has a right to disobey the orders of any court of this state . . . . Consideration of an objection where a party asserts that a pleading has been filed in violation of a court order, even though the Practice Book does not specifically provide for such an objection, is also supported by Practice Book § 1-8[9] . . . which requires that Practice Book provisions be construed to advance justice. . . . The proper administration of justice includes the necessity of enforcement of compliance with court orders." (Citations omitted; footnote in original; internal quotation marks omitted.)

The defendants, as part of their objection, argued that the substitute complaint violated the orders of Judge Trombley and Judge Dooley, and that it was "prejudicial in that, two years into the case, the plaintiff seeks 'another bite of the apple' by stating claims and allegations already ruled to have be legally insufficient and improper . . . ."

We agree that to permit a party to persist in refiling pleadings in a form previously disallowed does not advance the interests of justice. Rather, it encourages needless delay and places an unnecessary and unfair burden on the party who previously has successfully stricken or objected to the improper filing. When parties engage in such tactics, their opponent and the court needlessly and repetitively are forced back to square one. Furthermore, we conclude, after reviewing the defendants' objection and the plaintiff's reply to it, that the court proceeded properly. Those pleadings provided the parties with a full and fair opportunity to be heard, quite similar in nature to a case where a request to revise, and a consequent objection thereto, has been filed.[10]

B

Next, the plaintiff claims that Judge Shapiro erred in striking the plaintiff's August 6, 2012 substitute complaint from the docket because the court lacked the authority to disallow a substitute complaint filed by right pursuant to Practice Book §10-44. We disagree.

As previously noted in part III A of this opinion, because this claim involves the interpretive construction of the rules of practice, our review is plenary. Practice Book § 10-44 provides that "[w]ithin fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading." This court has clarified that this right "is limited to making those corrections needed to render the claims set forth in the original pleading legally sufficient. It is not an opportunity to file wholly amended pleadings that assert new legal claims . . . permission for which ordinarily could be obtained only in accordance with the provisions of Practice Book § 10-60." *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 180–81, 73 A.3d 742 (2013); see also *Stone* v. *Pattis*, supra, 144 Conn. App. 94–95 ("Practice Book § 10-44 does not permit [a party] to add new counts in subsequent amended complaints following the court's decision striking the . . . complaint in accordance with our rules of practice"). An example of a proper pleading filed pursuant to Practice Book § 10-44 is one that "suppl[ies] the essential allegation lacking in the complaint that was stricken." *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 551–52 n.4, 427 A.2d 822 (1980).

In the present case, subsequent to the granting of the defendants' motion to strike, the plaintiff had the right to file a substitute complaint correcting the legal deficiencies of the stricken count alleging wilful violation of the Rules of Professional Conduct. As the plaintiff has since acknowledged, however, the Rules of Professional Conduct do not give rise to a private cause of action. See *Noble* v. *Marshall*, 23 Conn. App. 227, 231, 579 A.2d 594 (1990). Thus, there was no "essential allegation" or any other correction to be added that would have made the stricken count legally sufficient.

Instead, the plaintiff filed an entirely new complaint asserting six legal theories for relief that had not been asserted in his stricken complaint. As Practice Book § 10-44 does not provide for the assertion of new legal claims, the court properly concluded that this substitute complaint should have been accompanied by a request for leave to amend pursuant to Practice Book § 10-60 (a), only to be accepted at the court's discretion. To allow the plaintiff to state new causes of action following the granting of a motion to strike under Practice Book § 10-44 would nullify the procedure of requiring court approved amendments pursuant to Practice Book § 10-60. Accordingly, Judge Shapiro properly held that the plaintiff could not file new causes of action following the granting of the defendants' motion to strike and that the plaintiff violated Practice Book § 10-60 in failing to seek leave to amend his complaint.

C

We next consider whether Judge Shapiro improperly concluded that the plaintiff, in filing the August 6, 2012 substitute complaint, disregarded the law of the case by violating Judge Trombley's and Judge Dooley's previous orders. We do not agree.

We consider whether a court correctly applied the law of the case doctrine under an abuse of discretion standard. "The law of the case doctrine provides that [w]here a matter has previously been ruled upon inter-locutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circum-stance." (Internal quotation marks omitted.) *Signore* v. *Signore*, 110 Conn. App. 126, 133, 954 A.2d 245 (2008).

In sustaining the defendants' objection to the plain-tiff's August 6, 2012 substitute complaint, Judge Shapiro found that on February 22, 2012, the plaintiff filed a request to amend his February 21, 2012 revised com-plaint, which was substantially premised on claimed violations by Giuliano of the Rules of Professional Con-duct and allegations concerning unauthorized represen-tation of his former wife by Giuliano.[11] He further found that in objecting to the February 22, 2012 proposed amended complaint, the defendants claimed that that proposed amendment was untimely, as it was filed six-teen months after the return day. The defendants also claimed that the proposed amended complaint expanded previous factual allegations and added new causes of action despite the fact that the additional events alleged by the plaintiff all occurred before the return day. The defendants "asserted that the proposed amendment would delay trial . . . [and] cause them inconvenience, in that, since the inception of the matter, they had defended the action based on one set of allega-tions and causes of action, and should not be forced to start over in protracted litigation."

Judge Shapiro also found that Judge Dooley's memo-randum of decision striking the first count of the plain-tiff's May 22, 2012 second revised complaint specifically determined that "any count based on a violation of the Rules of Professional Conduct is legally insufficient." Judge Shapiro then stated: "In the [substitute] com-plaint, the first count is again premised on numerous alleged violations of the Rules of Professional Conduct by [Giuliano] in her representation of the plaintiff's former wife. . . . In each of the subsequent counts of the [substitute] complaint, the plaintiff incorporates all of the allegations contained in the first count.[12] Thus, the core of each count is premised on alleged violations of the Rules of Professional Conduct by [Giuliano] . . . .[13] In addition, starting with the second count, the plaintiff adds in again the expanded allegations as to alleged unauthorized representation [that] were first contained in the first proposed amended complaint [of

February 22, 2012]. . . . Judge Trombley's March 21, 2012 order sustained the defendants' objection, [such that] the first proposed amended complaint did not become operative. These expanded allegations are also incorporated by reference in each of the subsequent counts of the currently proposed [substitute] complaint. In the sixth count, the plaintiff expands on the allegations to add that he suffered additional stress and anguish in the course of the dissolution action." (Footnotes added.)

It is clear in striking the substitute complaint that Judge Shapiro concluded that the plaintiff was violating the prior orders of both Judge Trombley and Judge Dooley. Judge Shapiro stated: "[The] plaintiff has not restated a cause of action by supplying the essential allegation lacking in the complaint that was stricken. . . . Rather, he has alleged a set of facts which are not materially different than that single group of facts which was the subject of Judge Dooley's memorandum of decision." (Citation omitted; internal quotation marks omitted.) With respect to Judge Trombley's prior orders, Judge Shapiro further articulated: "[C]ontrary to Practice Book § 10-60 (a), and Judge Trombley's [March 21, 2012] order, in the [substitute] complaint, the plaintiff seeks, without consent or the court's permission, to amend the complaint to add factual allegations and legal theories which were not allowed by Judge Trombley's ruling sustaining the plaintiff's previous objection to the plaintiff's request to amend. . . . [T]he plaintiff previously sought to add the expanded allegations concerning alleged unauthorized representation, which was not permitted. In addition, the plaintiff previously sought to claim conspiracy to defraud and violation of CUTPA, both of which are now included as theories in the [substitute] complaint. Judge Trombley's ruling precluded these amendments. The plaintiff's [substitute] complaint's changes in legal theories are even more untimely now than when Judge Trombley sustained the defendants' objection to the plaintiff's request to amend in March 2012."[14]

In summary, Judge Shapiro found that the plaintiff, in his substitute complaint, sought to add the expanded allegations concerning alleged unauthorized representation, which previously were not permitted by Judge Trombley. In addition, the plaintiff sought to add counts sounding in conspiracy to defraud and violation of CUTPA, which Judge Trombley also had disallowed. Furthermore, all of his proposed new counts included references to violations of the Rules of Professional Conduct, which Judge Dooley ruled rendered any count legally insufficient. Finally, all of the plaintiff's proposed new counts were untimely in light of the time the case had been pending and the fact that all of the new allegations pertained to events that occurred prior to the initiation of this action. After a thorough review of the pleadings, we do not find error in Judge Shapiro's con-

clusion that all of the newly alleged counts in the plaintiff's substitute complaint contained materially similar allegations to those in his February 22, 2012 first proposed amended complaint, as rejected by Judge Trombley, and the first count of his May 22, 2012 second revised complaint, as rejected by Judge Dooley. Given that similarity and the considerable amount of time that had passed since the action initially was brought, it was within Judge Shapiro's discretion to sustain the defendants' objection to the plaintiff's substitute complaint.

In his claim as to the impropriety of Judge Shapiro's rulings, the plaintiff also argues, in conclusory fashion with scant analysis, that he was denied due process when Judge Shapiro struck the plaintiff's substitute complaint from the docket and subsequently rendered judgment for the defendants. We disagree.

"A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . . It is a fundamental tenet of due process of law . . . that persons whose . . . rights will be affected by a court's decision are entitled to be heard at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Stone* v. *Pattis*, supra, 144 Conn. App. 87 n.6.

Practice Book § 10-44 provides that "in those instances where an entire complaint . . . has been stricken, and the party whose pleading . . . has been so stricken fails to file a new pleading within [a] fifteen day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint . . . ." Here, the plaintiff's entire complaint was stricken on July 26, 2012. On or before August 9, 2012, the plaintiff failed to file a proper new pleading. Before his substitute complaint was stricken, he had ample opportunity to reply to the defendants' objection to it. After Judge Shapiro considered all of the plaintiff's arguments and ruled on the defendants' objection, the case fell squarely within the provision of Practice Book § 10-44, allowing Judge Shapiro to grant the defendants' September 27, 2012 motion for judgment. Despite his reliance on Practice Book § 10-44, the plaintiff had no right under that provision to replead the August 6, 2012 substitute complaint, as that complaint was not disposed of by means of a motion to strike, but rather by objection. On September 25, 2012, Judge Shapiro's decision on the defendants' objection to the substitute complaint gave the plaintiff guidance as to a possible way to remedy the legal and procedural deficiencies of his pleading. He could have requested leave to file an amended complaint, but he failed to do so before the court ruled on the defendant's motion for judgment, despite the fact that a properly amended complaint was long overdue as a result of Judge Dooley's July 26, 2012

ruling. See *Peoples* v. *Carberry*, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV-10-5013413-S (June 14, 2011) (52 Conn. L. Rptr. 106) (plaintiff who improperly filed amended complaint alleging new causes of action in derogation of Practice Book § 10-44 would likely be able to subsequently file request for leave to amend absent any claim of unfair prejudice). A period of twenty days then elapsed before Judge Shapiro granted the defendants' September 27, 2012 motion for judgment on October 17, 2012, after the court considered the plaintiff's dilatory motions for an extension of time to plead and to reargue for the acceptance of his August 6, 2012 substitute complaint, which motions were not filed until October 11, 2012. Given the ample time and opportunity afforded to the plaintiff, it cannot be said that his due process rights were violated.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Practice Book § 10-35 provides: "Whenever any party desires to obtain (1) a more complete or particular statement of the allegations of an adverse party's pleading, or (2) the deletion of any unnecessary, repetitious, scandalous, impertinent, immaterial or otherwise improper allegations in an adverse party's pleading, or (3) separation of causes of action which may be united in one complaint when they are improperly combined in one count, or the separation of two or more grounds of defenses improperly combined in one defense, or (4) any other appropriate correction in an adverse party's pleading, the party desiring any such amendment in an adverse party's pleading may file a timely request to revise that pleading."

Practice Book § 10-37 (b) explains the procedure for objecting to a request to revise, and provides in relevant part: "If the judicial authority overrules the objection, a substitute pleading in compliance with the order of the judicial authority shall be filed within fifteen days of such order."

[2] The plaintiff argues that his May 22, 2012 second revised complaint contained the expanded allegations as to unauthorized representation that Judge Trombley had disallowed in his order of March 21, 2012, and that the defendants' failure to file a request to revise for a *second* time to object to these expanded allegations constituted a waiver of any objection to their inclusion. A review of the first and second revised complaints, however, indicates that the expanded allegations as to unauthorized representation in the first proposed amended complaint that were prohibited by Judge Trombley are not contained in the plaintiff's second revised complaint. Accordingly, we find no waiver on the part of the defendants that somehow would have negated Judge Trombley's order.

[3] The plaintiff has not appealed the order striking the first count of his May 22, 2012 second revised complaint.

[4] Practice Book § 10-44 provides in relevant part: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading . . . ."

[5] Practice Book § 10-60 provides in relevant part:

"(a) . . . [A] party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to [the first thirty days after the return day] in the following manner:

"(1) By order of judicial authority; or

"(2) By written consent of the adverse party; or

"(3) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party . . . and with proof of service endorsed thereon. . . .

"(b) The judicial authority may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial."

[6] Nearly a month later, on February 27, 2012, the plaintiff filed a motion to reargue, asking Judge Trombley to reconsider the decision suspending the February 8, 2012 deposition. By that point, the parameters of any proposed rescheduled deposition had been greatly altered, as the court had pending before it the plaintiff's request for leave to file his February 22, 2012 proposed amended complaint. It would have been impossible for the court to resched-

ule the deposition after only reconsidering the status of the parties' dispute as of February 8, 2012. Judge Trombley summarily denied the motion to reargue. The plaintiff has not sought articulation of this order or appealed the denial of the motion to reargue.

[7] The plaintiff also claims that the court acted improperly in dismissing the claim absent the defendant's filing of a motion to dismiss. This claim is without merit, as "[i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time." (Internal quotation marks omitted.) *Stone* v. *Pattis*, 144 Conn. App. 79, 96, 72 A.3d 1138 (2013).

[8] See *Walker* v. *Temple Surgical Center*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X10-CV-06-5005306-S (February 7, 2008) (objection to revised complaint considered and sustained after granting of motion to strike); *Estate of Ridgaway* v. *Cowles & Connell*, Superior Court, judicial district of Middlesex, Complex Litigation Docket, Docket No. X04-CV-03-0103516-S (October 14, 2004) (objection to substitute complaint filed after granting of motion to strike accepted and treated in nature of request to revise by court); *Dodge* v. *Lane*, Superior Court, judicial district of Fairfield, Docket No. CV-96-0332808-S (April 9, 1998) (request for leave to amend complaint denied pursuant to doctrine of law of the case based on defendant's objection after court already had sustained objection to same claim asserted in prior complaint).

[9] Practice Book § 1-8 provides: "The design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice."

[10] Our Supreme Court has found it appropriate for a defendant to file either a motion to strike or a request to revise when an allegedly improper revised complaint replaces a stricken complaint, especially when the allegations of the revised complaint appear to be the same in substance as those of the earlier, stricken complaint. See *Royce* v. *Westport*, 183 Conn. 177, 180–81, 439 A.2d 298 (1981); *Good Humor Corp.* v. *Ricciuti*, 160 Conn. 133, 137, 273 A.2d 886 (1970); see also *Parker* v. *Ginsburg*, 85 Conn. App. 777, 781, 859 A.2d 46 (2004) (when allegations of amended complaint appear to be same in substance as those of earlier complaint that was stricken, defendant may challenge amended complaint by filing request to revise); *P & L Properties, Inc.* v. *Schnip Development Corp.*, 35 Conn. App. 46, 50, 643 A.2d 1302 (either motion to strike or request to revise may be used when amended complaint merely restates original cause of action that was previously stricken), cert. denied, 231 Conn. 913, 648 A.2d 155 (1994). None of these cases, however, involve a plaintiff attempting to utilize Practice Book § 10-44 to circumvent the sustaining of an objection to a previous request to amend the complaint prior to the decision granting a motion to strike. Thus, the factors to be considered in whether to permit the amendment, as set forth in Practice Book § 10-60 and cited in Judge Trombley's order, were not at issue in those cases. It is undeniable that an objection to an amended complaint is a proper vehicle to ask the court to preclude a party from filing an amended complaint pursuant to § 10-60 for reasons such as delay or prejudice, reasons cited by the defendants in this case. See *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 257–58, 905 A.2d 1165 (2006) (upholding court's decision to sustain objection to amended complaint on grounds of delay and prejudice).

[11] The unauthorized representation allegations that first appeared in the plaintiff's February 21, 2012 revised complaint are expanded upon by including three additional sentences in plaintiff's February 22, 2012 proposed amended complaint

[12] See paragraph 7 of all counts of the substitute complaint.

[13] "The Rules of Professional Conduct caution those who seek to rely on their provisions. They provide a framework for the ethical practice of law. . . . Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability." (Internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 255 Conn. 390, 403, 766 A.2d 416 (2001). Notably, the defendants, in their objection to the plaintiff's request for leave to file his February 22, 2012 proposed amended complaint, alleged that the grievance panel for the statewide grievance committee had dismissed the plaintiff's complaint against Giuliano on November 30, 2011, finding no probable cause. The defendants attached a copy of the panel's decision to their objection.

[14] In his memorandum of decision on the plaintiff's motion to reargue, Judge Shapiro also noted that "[s]tyling the facts, as alleged in the [August 6, 2012 substitute] complaint, as supporting claims of alienation of affection (second count); abuse of process (fourth count); vexatious litigation (fifth count); and intentional infliction of emotional distress (sixth count), does not change the fact that the expanded allegations were not permitted by Judge Trombley and that the allegations are not materially different from those addressed by Judge Dooley's decision, which . . . is the law of the case."

————————————————————